UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORDON CLARK, in his individual capacity and in his capacities as husband, sole fiduciary, sole beneficiary, and sole creditor of the Estate of Lillian J. Clark<br>    *Plaintiff*<br><br>    *v.*<br><br>STATE OF CONNECTICUT, ET AL.<br>    *Defendants.* | Case No.: 3:22-CV-01314 (OAW) |

# OMNIBUS RULING

**THIS RULING** addresses two motions: 1) a Motion to Dismiss by Office of the Chief Medical Examiner ("the OCME"),[1] John/Jane Does of the OCME, and Investigator Marissa of the OCME (together, the "OCME defendants"), ECF No. 49; and 2) a Motion to Dismiss by the State of Connecticut, Governor Ned Lamont, Attorney General William Tong, the Connecticut Department of Consumer Protection ("the DCP"), and DCP Commissioner Michelle H. Seagull (together, the "State of Connecticut defendants"), ECF No. 50. The court has reviewed the motions themselves, ECF Nos. 49 and 50, the plaintiff's opposition thereto, ECF Nos. 57 and 58, and the State of Connecticut defendants' reply to Plaintiff's opposition motion, ECF No. 61. For the below reasons, the motions to dismiss are **GRANTED.**

---

[1] Plaintiff did not list the Office of the Chief Medical Examiner in the body of his complaint. However, he did list it in the Complaint's caption. *See* Compl. at Cover Page and Parties, ECF No. 1. In his response to the OCME defendants' motion to dismiss, ECF No. 49, Plaintiff states that "the OCME was inadvertently and mistakenly missing" from the body of complaint and that "there are ten (10) claims asserted against said OCME Defendants." *See* Plaintiff's Opposition to the OCME Defendants' Motion to Dismiss at Statement of Facts ¶ 3, ECF No. 57. Therefore, the court interprets the complaint as naming the OCME as a defendant.

1

Plaintiff Gordon Clark, who is self-represented, brought this action against the OCME defendants, the State of Connecticut defendants, and at least fourteen others following the tragic passing of his wife, Lillian Clark. *See* Compl. at Parties ¶¶ 3-23, ECF No. 1. Plaintiff Clark's claims arise out of his treatment by officials from the Enfield Police Department and the OCME in the hours after his wife's passing, and the stewardship of Mrs. Clark's remains by those officials. *Id.* at Statement of Facts ¶¶ 13-17. Plaintiff Clark alleges violations of constitutional law, tort law, contract law, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42–110a et seq. *See* Compl., Counts 1-10, ECF No. 1.

## I. BACKGROUND

Shortly after midnight on Sunday October 18, 2020, Mrs. Clark passed away in the presence of her devoted husband at her home in Enfield, Connecticut. Compl. at Statement of Facts ¶ 9, ECF No. 1. Mrs. Clark's death was due to complications of Parkinson's disease and was deemed "natural" by Connecticut's OCME. *Id.* ¶ 16.[2] Due to the exigencies of COVID-19 pandemic, the plaintiff, Mr. Clark, was informed by his local funeral home that it could not recover Mrs. Clark's body (in order to make arrangements for her remains) until Plaintiff notified the Enfield Police Department of his wife's passing. *Id.* ¶ 11. Plaintiff contacted the Enfield Police Department and several first responders arrived at his home in the early hours of Sunday morning, including members of the Enfield Fire Department and the Enfield Police Department. *Id.* ¶¶ 12-13. Plaintiff states

---

[2] The details of Mrs. Clark's death were alleged in the complaint and corroborating documentation from the OCME was not provided. *Id.* ¶ 16.

that he "cannot fully remember and/or list" all of the first responders who went to his home that morning.  *Id.* ¶ 13.

The first responders established that Mrs. Clark had passed away.  *Id.*  One unidentified first responder informed Plaintiff that he must produce Mrs. Clark's Living Will and Healthcare Proxy, otherwise the first responders would need to perform cardiopulmonary resuscitation ("CPR") on Mrs. Clark.  *Id.*  Plaintiff produced Mrs. Clark's Living Will and Healthcare Proxy and CPR was not performed.  *Id.*  Plaintiff states that at the time, in the hours following his wife's passing, contemplating the possibility of CPR being performed on Mrs. Clark's "frail" body was traumatic.  *See id.*

In the hours after the first responders arrived at Plaintiff's home, Enfield police officers handled and took photographs of Mrs. Clark's body.  *Id.* ¶¶ 14(1)-(3).  At various times, Enfield police officers instructed Plaintiff to stay out of the room where Mrs. Clark's body lay and the officers removed Mrs. Clark's clothes, rolled her body over, and took photographs of her body while Plaintiff was in the hallway.  *Id.* ¶ 14(1).  This process was repeated when co-defendant, Enfield Detective Brian Callaghan, arrived.  *Id.* ¶ 14(2).  During this time period, the officers did not allow Plaintiff to attend to Mrs. Clark's body by, for example, wiping her nose or cutting her fingernails.  *Id.* ¶ 14(7).

Over the course of the morning, Plaintiff was questioned by police officers.  *Id.* ¶ 14(4).  He was sometimes asked the same question many times.  *Id.*  Detective Callaghan told Plaintiff that he would be required to go to the Enfield police department at a future time to answer additional questions, and he gave Plaintiff his business card to arrange a meeting.  *Id.* ¶ 14(5). Detective Callaghan also informed Plaintiff that he was going to order a full autopsy of Mrs. Clark.  *Id.* ¶ 14(6).  Plaintiff alleges that when he asked

3

Detective Callaghan why he would order a full autopsy, Callaghan "had no answer." *Id.* at. When asked by Detective Callaghan, Plaintiff voiced his objection to a full autopsy "unless absolutely necessary." *Id.*

At approximately 6:30AM, two unidentified OCME employees arrived at Plaintiff's home to retrieve Mrs. Clark's body. *Id.* ¶ 14(8). The employees removed Mrs. Clark's hat and Plaintiff alleges they "threw" it into the bag where Mrs. Clark's body would go. *Id.* One of the employees also removed Mrs. Clark's wedding band and gave it to Plaintiff. *Id.* Plaintiff alleges that the employee handled Mrs. Clark's hand so roughly they could have "torn off and/or dislocated" her finger. *See id.* The OCME employees then transferred Mrs. Clark's body from her bed. *Id.* Plaintiff alleges that this was done without consideration for his pleas that the employees handle Mrs. Clark's body gently, and that one employee nearly caused Mrs. Clark's head to hit the floor. *See id.* Later that morning, Plaintiff called OCME and registered his objection to a full autopsy "unless absolutely necessary." *Id.* ¶ 15.

On Monday October 19, 2020, Associate Medical Examiner Dr. Dollett White of the OCME spoke with Plaintiff after examining Mrs. Clark's body. *Id.* ¶¶ 16-17. Dr. White informed Plaintiff that the OCME classified Mrs. Clark's cause of death as "complications of Parkinson's Disease" and the nature of death as "natural." *Id.* ¶ 16. Dr. White also told Plaintiff that she did not need to perform a full or partial autopsy on Mrs. Clark and that these results were communicated to co-defendant Callaghan. *Id.* ¶¶ 17-18.

Plaintiff alleges that the interactions with the first responders, the Enfield Police officials, and the OCME employees have caused "severe emotional distress," and have "compounded the trauma of losing Mrs. Clark." *Id.* ¶ 22. He alleges that he "live[s] with

4

the fear and anxiety that pictures" of Mrs. Clark are being "indiscriminately" electronically shared by Enfield police officers, within Enfield law enforcement and beyond.  *Id.*

Plaintiff brings a total of ten counts against Defendants, alleging violations of constitutional law, tort law, contract law, and CUTPA.  *Id.* at Counts 1-10.  He seeks money damages for each count for a total of $15,000,000, and he requests that all pictures taken of Mrs. Clark and copies thereof are destroyed, with the exception of the photographs taken by the OCME.  *Id.* at Request for Relief ¶ 1, 4.  He also requests a third-party investigation into both the Enfield Police Department and "across the *State of Connecticut*" regarding the practice of taking photographs of deceased individuals for non-law-enforcement purposes.  *Id.* ¶ 2 (emphasis in original).  Finally, he requests corrections to alleged "**errors and material omissions**" in the Enfield Police report from the morning of October 18, 2020.  *Id.* ¶ 3 (emphasis in original).

## II.  <u>LEGAL STANDARD</u>

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a plaintiff must prove "by a preponderance of the evidence that [subject matter jurisdiction] exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  If a district court lacks statutory or constitutional authority to adjudicate a case, the case must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  *Id.*  The Eleventh Amendment pertains to a district court's constitutional authority to adjudicate a case because "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Williams v. Marinelli*, 987

F.3d 188, 196 (2d Cir. 2021) (holding that if the relief sought by the plaintiff violated the Eleventh Amendment, the court could lack the power to grant the relief).

At the same time, when reviewing a 12(b)(1) motion to dismiss, a district court must "take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  Further, when reviewing a pro se plaintiff's submissions, the district court must hold them "to less stringent standards than formal pleadings drafted by lawyers." *Vargas-Crispin v. Zenk*, 376 F. Supp. 2d 301, 303 (E.D.N.Y. 2005) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)).  The court must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *Id.* (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)).  Nonetheless, pro se plaintiffs still must satisfy relevant rules of procedural and substantive law. *See id.*

III. **DISCUSSION**

Plaintiff sued the State of Connecticut, the DCP, the OCME, Governor Ned Lamont "in his elected state governmental capacity," Attorney General William Tong "in his elected state governmental capacity," DCP Commissioner Michelle Seagull "in her governmental state agency capacity," OCME Investigator Marissa "in his/her governmental state agency capacity," and OCME employees "John Doe(s)" in their "governmental state agency capacity."  *See* Compl. at Parties ¶¶ 3-5, 20-23, ECF No. 1; Plaintiff's Opposition to the OCME Defendants' Motion to Dismiss at Statement of Facts ¶ 3, ECF No. 57.

6

Defendants bring these motions to dismiss under Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, 12(b)(4) and 12(b)(5) for lack of proper service, and 12(b)(6) for failure to state a claim upon which relief can be granted.  *See* Mot. To Dismiss at 1, ECF No. 49; Mot. To Dismiss at 1, ECF No. 50.  Both the State of Connecticut defendants and the OCME defendants move to dismiss Plaintiff's claims against them on the grounds of Eleventh Amendment sovereign immunity.  This ruling exclusively addresses the plaintiff and defendants' arguments related to Rule 12(b)(1) because the outcome of that analysis is dispositive.

### A.  Claims Against the State of Connecticut

Ordinarily, the Eleventh Amendment bars federal suits against a state, regardless of the relief sought.  It provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Though not explicit in its text, the Eleventh Amendment also has been interpreted as barring federal suits against a state brought by that state's own citizen.  *Mary Jo C. v. NY State & Local Ret. Sys.*, 707 F.3d 144, 151 (2d. Cir. 2013).  Some exceptions apply to the states' sovereign immunity: the Eleventh Amendment prohibits a suit against a state "unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity."  *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2001) (citation omitted).

These principles apply to Plaintiff's claims against the State of Connecticut.  Plaintiff argues that "[t]he 11th Amendment, under strict constructionism, clearly does not

7

grant the State of Connecticut any kind of immunity." Plaintiff's Opposition to the State of Connecticut Defendants' Motion to Dismiss at Statement of Facts ¶ 19, ECF No. 58. However, well-established precedent rebuts this claim. *See, e.g.*, *Hans v. Louisiana*, 134 U.S. 1, 20 (1890); *Empls. of Dep't of Pub. Health & Welfare, Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973); *Mary Jo C.*, 707 F.3d at 151 (2d Cir. 2013). The State of Connecticut has not consented to the litigation by waiving its sovereign immunity, and no federal statute applies that overrides Connecticut's immunity. *See generally* Defendant's Memorandum in Support of their Motion to Dismiss, ECF No. 50-1. Accordingly, the Eleventh Amendment bars Plaintiff's claims against the state. The State of Connecticut defendants' Motion to Dismiss is **GRANTED** on all counts with respect to the State of Connecticut.

## B. Claims Against State Agencies and Departments

"[A] suit against a state agency or department constitutes a suit against a state for Eleventh Amendment purposes." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Consequently, Eleventh Amendment immunity shields Connecticut state agencies and departments from suits in federal court just as it shields the State of Connecticut. *Lee v. Dep't of Child. & Fams.*, 939 F. Supp. 2d 160, 165 (D. Conn. 2013) ("The scope of the Eleventh Amendment bar depends on the identity of the defendant. For suits against states or their agencies, '[t]his jurisdictional bar applies regardless of the nature of the relief sought.'") (quoting *Pennhurst*, 465 U.S. at 100).

Here, Plaintiff sued a state agency, the OCME, and a state department, the DCP. *See* Compl. at Parties ¶22, ECF No. 1; Plaintiff's Opposition to the OCME Defendants' Motion to Dismiss at Statement of Facts ¶ 3, ECF No. 57 (clarifying that the OCME is a defendant). Applying the above principles, the Eleventh Amendment's jurictional bar also applies to Plaintiff's claims against the OCME and the DCP in their entirety. Accordingly, the State of Connecticut and OCME defendants' Motions to Dismiss are **GRANTED** on all counts with respect to the DCP and OCME.

### C.  Claims Against Individuals Acting in Their Official Capacity

"A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer." *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997). Therefore, "[t]he Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis*, 804 F.3d 178, 193 (2d Cir. 2015).

Plaintiff brought claims against Connecticut Governor Ned Lamont "in his elected state governmental capacity," Attorney General William Tong "in his elected state governmental capacity," DCP Commissioner Michelle Seagull "in her governmental state agency capacity," OCME Investigator Marissa "in his/her governmental state agency capacity," and OCME employees "John Doe(s)" in their "governmental state agency capacity." *See* Compl. at Parties ¶¶ 4, 5, 20, 21, 23, ECF No. 1. The court concludes that Plaintiff sues each of these individuals in their official capacities. Applying the above legal principles, it is clear that Plaintiff's claims against these individuals for monetary relief are wholly barred by the Eleventh Amendment.

The Eleventh Amendment's prohibition of suits against state officials is not absolute. Under the *Ex Parte Young* doctrine, a private party may sue a state official in their official capacity for injunctive relief from ongoing violations of federal law. *See In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 617 (2d Cir. 2005). Here, it appears that Plaintiff seeks both money damages and injunctive relief from the state officials. The court notes that Plaintiff's request does not clearly delineate which of his requests are directed at which of the twenty-two named defendants. *See* Compl. at Request for Relief ¶¶ 1-4. However, the court will presume that Plaintiff's request for a "third-party independent investigation across the *State of Connecticut*" probing the practice of "taking photos of deceased individuals for **non-law-enforcement purposes**," is directed at the state officials here. *See id.* ¶ 2 (emphasis in original).

Treating Plaintiff's request for state-wide investigation as injunctive relief, the court concludes that the relief sought does not fall into the exception permitted under the *Ex Parte Young* doctrine because the relief sought is not permissible under Article III standing doctrine. Plaintiff cannot seek a state-wide investigation into the practice of taking photos of deceased individuals for non-law enforcement purposes because this relief would not redress the Plaintiff's Article III injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992) (To have standing, it must be "'likely,' as opposed to merely 'speculative,'" that the plaintiff's injury "will be 'redressed by a favorable decision.'") (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 43 (1976)). Plaintiff has not shown that it is likely that his legally cognizable injury—the treatment of Mrs. Clark's body and Plaintiff's treatment at the hands of first responders, Enfield police officers, and OCME employees, and the ensuing emotional distress plaintiff suffers—

10

would be "redressed by a favorable decision" from the court.  *See id.*  A state investigation as requested by Plaintiff would not ameliorate or undo what Plaintiff experienced, nor would it address the "fear and anxiety" that Mr. Clark lives with that photographs of Mrs. Clark are being shared electronically by Enfield law enforcement.  Compl. at Statement of Facts ¶ 22, ECF No. 1.

At best, Plaintiff's requested relief would provide him with "psychic satisfaction," which does not amount to an Article III remedy because it does not redress a legally cognizable injury.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("By the mere bringing of his suit, every plaintiff demonstrates his belief that a favorable judgment will make him happier. But … that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury."); *Doyle v. Town of Litchfield*, 372 F. Supp. 2d 288, 303 (D. Conn. 2005) ("[S]ome emotional or mental satisfaction ... is inadequate to confer standing, no matter how worthy the cause.").

While Plaintiff also requests "such other and further relief as this Court may deem reasonable and just under the circumstances," Compl. at Counts 1-10, ECF No. 1, it does not alter the standing and Eleventh Amendment analysis, as it does not constitute a request for further injunctive relief.  *See Minto v. Connecticut State Police*, No. 3:14-CV-00747 (VLB), 2015 WL 5822596, at *12 n.5 (D. Conn. Sept. 30, 2015) (holding that a similar request "does not constitute a request for injunctive relief.") (Citing *White v. Martin*, 26 F. Supp. 2d 385, 387 n. 4 (D. Conn. 1998)).

On all counts, the State of Connecticut and OCME defendants' Motions to Dismiss are **GRANTED** as to Governor Lamont, Attorney General Tong, DCP Commissioner Seagull, OCME Investigator Marissa, and the John Doe OCME employees.

### D. Plaintiff's Amended Complaint

On May 30, 2023, Plaintiff sought leave to file an amended complaint. *See* Mot. To Amend/Correct Compl., ECF No. 65. While the court has not ruled upon such motion, any such ruling would not remedy the Eleventh Amendment and Article III standing issues herein discussed. Accordingly, the State of Connecticut and OCME defendants' Motions to Dismiss are **GRANTED** on all counts with respect to the State of Connecticut, the OCME, the DCP, Governor Lamont, Attorney General Tong, DCP Commissioner Seagull, OCME Investigator Marissa, and the John Doe OCME employees.

## IV. CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss by the OCME defendants (ECF No. 49) is **GRANTED.**

2. The Motion to Dismiss by the State of Connecticut defendants (ECF No. 50) is **GRANTED.**

3. The Motion to Stay by State of Connecticut defendants (ECF No. 35) is mooted and accordingly **DISMISSED.**

4. The Motion to Stay by OCME defendants (ECF No. 39) is mooted and accordingly **DISMISSED.**

**IT IS SO ORDERED** in Hartford, Connecticut, this 28th day of September, 2024.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE