UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

GORDON CLARK,    :
    :
                    Plaintiff,    :
    :
            v.    :    22-CV-1314 (SFR)
    :
STATE OF CONNECTICUT, ET AL.,    :
    :
                    Defendants.    :
---------------------------------------------------------------- x

**MEMORANDUM & ORDER**

Fourteen Defendants, including the Town of Enfield and a number of its officers and employees, bring this motion to dismiss Plaintiff Gordon Clark's Complaint against them for various alleged violations of federal and state law. For the reasons set forth below, I dismiss Clark's Complaint in its entirety with leave to amend some of the claims.

I.    **BACKGROUND**

A.    **Factual Background**

The following facts are alleged in the Complaint. Shortly after midnight on October 18, 2020, Mrs. Lillian Clark passed away in the presence of her devoted husband at their home in Enfield, Connecticut. Compl. 9, ECF No. 1. Mrs. Clark's death was due to complications of Parkinson's disease and was deemed "[n]atural" by Connecticut's Office of the Chief Medical Examiner ("OCME"). *Id.* at 12.

Due to the exigencies of the COVID-19 pandemic, Clark was informed by his local funeral home that it could not recover Mrs. Clark's body until Clark notified the Enfield Police Department of his wife's passing. *Id.* at 9. After Clark contacted the Enfield Police Department, several first responders arrived at his home in the early hours of October 18, 2020,

1

including members of the Enfield Fire Department and the Enfield Police Department. *Id.* at 9-10. Clark states that he "cannot fully remember and/or list" all the first responders who went to his home that morning. *Id.* at 9. The first responders established that Mrs. Clark had passed away. *Id.*

In the hours after the first responders arrived at Clark's home, Enfield police officers handled and took photographs of Mrs. Clark's body. *Id.* at 10. At various times, Enfield police officers instructed Clark to stay out of the room where Mrs. Clark lay and the officers removed Mrs. Clark's clothes, rolled her over, and took photographs of her while Clark was in the hallway. *Id.* This process was repeated when Defendant Detective Brian Callaghan arrived, and Callaghan himself took photographs of Mrs. Clark's naked body. *Id.* During this time period, Clark pleaded with the officers to be gentle. *Id.* The officers did not allow Clark to attend to Mrs. Clark by, for example, wiping her nose or cutting her fingernails. *Id.* at 11.

Over the course of the morning, Clark was questioned by police officers. *Id.* at 10. He was sometimes asked the same question many times. *Id.* Callaghan told Clark that he would be required to go to the Enfield Police Department at a future time to answer additional questions, and he gave Clark his business card to arrange a meeting. *Id.* at 11. Callaghan also informed Clark that he was going to order a full autopsy of Mrs. Clark. *Id.* Clark alleges that when he asked Callaghan why he would order a full autopsy, Callaghan "had no answer." *Id.* When asked by Callaghan, Clark voiced his objection to a full autopsy "unless absolutely necessary." *Id.*

At approximately 6:30AM on October 18, 2020, two unidentified OCME employees arrived at Clark's home to retrieve Mrs. Clark's body. *Id.* Later that morning, Clark called OCME and registered his objection to a full autopsy "unless absolutely necessary." *Id.* at 12.

On October 19, 2020, Associate Medical Examiner Dr. Dollett White of the OCME spoke with Clark after examining Mrs. Clark's body. *Id.* Dr. White informed Clark that the OCME classified Mrs. Clark's cause of death as "[c]omplications of Parkinson's Disease" and the nature of death as "[n]atural." *Id.* Dr. White also told Clark that she did not need to perform a full or partial autopsy on Mrs. Clark and that these results were communicated to Callaghan. *Id.*

Clark alleges that the interactions with the first responders and the Enfield Police officials have caused "severe emotional distress," and have "compounded the trauma of losing Mrs. Clark." *Id.* at 13. He alleges that he "live[s] with the fear and anxiety that pictures" of Mrs. Clark are being "indiscriminately" electronically shared by Enfield police officers, within Enfield law enforcement and beyond. *Id.*

**B.      Procedural History**

Clark filed this Complaint on October 18, 2022 alleging ten counts, including claims of violations of constitutional law, tort law, contract law, and the Connecticut Unfair Trade Practices Act ("CUTPA"). *Id.* at 19-29. Clark seeks money damages and requests that all pictures taken of Mrs. Clark and copies thereof be destroyed. *Id.* at 30. Clark also requests a third-party investigation into both the Enfield Police Department and "across the State of Connecticut" regarding the practice of taking photographs of deceased individuals for non-law-enforcement purposes. *Id.* Finally, he requests corrections to alleged "errors and material omissions" in the Enfield Police report from the morning of October 18, 2020. *Id.*

The state Defendants moved to stay discovery on December 1, 2022. ECF No. 39. The court granted a stay of discovery on December 16, 2022, pending resolution of the Defendants' motions to dismiss. ECF No. 45. The OCME Defendants filed a motion to dismiss on January

3, 2023. ECF No. 49. The state and town Defendants moved to dismiss on January 4, 2023. ECF Nos. 50, 51. While the motions to dismiss were pending, Clark filed a Motion to Amend the Complaint on May 30, 2023, ECF No. 65, which Defendants opposed, ECF Nos. 66-68.[1]

The Court granted the State and OCME Defendants' motions to dismiss on September 29, 2024, and dismissed as moot their motions to stay discovery, ECF No. 71. Plaintiff filed an interlocutory appeal of that ruling on September 30, 2024. ECF No. 72. The case was transferred to me on January 6, 2025.[2] ECF No. 74. The Second Circuit dismissed the interlocutory appeal on March 26, 2025. ECF No. 75.

I held a conference with the parties on February 19, 2026. ECF No. 79. At that conference, I dismissed the Enfield Police Department from the case, denied Clark's Motion to Amend the Complaint, extended the deadline for service, and ordered Clark to re-serve the individual Police Defendants. *Id.*[3] On March 16, 2026, Clark filed a Notice of Service indicating that he had re-served the individual Police Defendants. ECF No. 89.

---

[1] The docket reflects that Clark filed an Amended Complaint on May 15, 2023. ECF No. 64. However, as of that date, Clark was not entitled to file an amended complaint as of right under Federal Rule of Civil Procedure 15(a). Thus, the original Complaint, ECF No. 1, remains the operative Complaint.

[2] This case was initially assigned to the Honorable Omar A. Williams.

[3] The Motion to Dismiss argued that the claims against the individual Police Defendants should be dismissed for improper service. ECF No. 51, at 7-9. Defendants initially argued that Clark had not filed proof of service on the docket. *Id.* When Clark subsequently filed proof of service, Defendants maintained that Clark had not properly served the individual Police Defendants because he had not served process on the Town Clerk, as required under state law. ECF No. 62, at 1-2. At the status conference on February 19, 2026, I found that service on the individual Police Defendants was improper for that reason. However, I found good cause under Fed. R. Civ. P. 4(m) to extend the deadline for service of process because Clark "is *pro se*, the improper service was not a result of pure neglect, Defendants have actual notice, and the applicable statute of limitations would likely bar the refiled action." ECF No. 79 (citing *Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007)). Clark subsequently served process for the individual Police Defendants on the Enfield

## II.    **LEGAL STANDARD**

The standard governing motions to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

Additionally, I note that Clark is representing himself *pro se*. "*Pro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F.

---

Town Clerk, who accepted service on behalf of the named individual Police Defendants but not the John/Jane Doe Defendants. ECF No. 89.

Because Clark provided two copies of the process documents to the Town Clerk, I find that service of process was proper for the individual Police Defendants in both their individual and official capacities. *See Rogers v. City of Middletown*, No. 22-CV-1545 (VDO), 2024 WL 4814235, at *3 (D. Conn. Nov. 18, 2024) (quoting *Field v. City of Hartford*, No. 18-CV-1803 (JAM), 2019 WL 4279011, at *6 (D. Conn. Sep. 9, 2019)) ("[W]hen a plaintiff serves process against a municipal employee in accordance with the requirements of Conn. Gen. Stat. § 52-57(b)(7), the plaintiff has served that employee in both the employee's official and personal capacity.").

App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)).

### III.    **DISCUSSION**

#### A.    **Individual Defendants**

Clark brings claims against a number of individual Defendants associated with the Town of Enfield, including Ellen Zoppo-Sassu as Enfield Town Manager and Robert Cressotti as Mayor of Enfield; various Enfield Police Defendants including Police Chief Alaric Fox, Detective Brian Callaghan, Connor Wyllie, Thomas Foy, Sergeant King, Officer Schmidt, and Officer Dulka; and several John/Jane Does, including the "Director of Public Safety," a group of John/Jane Does described as "Enfield First Responders," and a group of John/Jane Does described as being "of Enfield Police Dept."

#### 1.    **Official or Individual Capacity**

As an initial matter, Defendants argue that all of Clark's claims against the individually named Defendants are brought solely in their official capacities, and are thus duplicative of the claims against the Town of Enfield, because "[s]ection 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself. . . . Therefore, in order to assert a viable claim against a municipal employee in his official capacity, the plaintiff must have a viable *Monell* claim against the municipality." ECF No. 51, at 11 (internal quotation marks omitted) (quoting *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 671 (D. Conn. 2008)). Clark responds that Defendants can be sued in both their individual and official capacities. Pl.'s Mem., ECF No. 59, at 6.

By the explicit terms of the Complaint, Clark purports to sue all the individual defendants in their "municipal governmental agency capacity," thus suggesting that he seeks

to sue in an official rather than individual capacity. *See* Compl. 2-3. That said, I am obligated to liberally construe a *pro se* plaintiff's filings to raise the strongest claims they suggest. I note that Clark seeks money damages against the individual Defendants, which would not be available in an official capacity suit against these officers for actions performed in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Fuller v. Smirga*, No. 15-cv-00112 (JAM), 2015 WL 893466, at *1, *3 (D. Conn. Mar. 2, 2015) (dismissing claims for monetary damages against Bridgeport, Stratford, and Fairfield police officers in their official capacities because the officers in their official capacity were "immune under the Eleventh Amendment"). I therefore construe Clark's complaint as suing all individual Defendants in their individual and official capacities.

### 2.    Supervisory Officials

Clark names as Defendants Ellen Zoppo-Sassu as Enfield Town Manager, Robert Cresotti as Mayor of Enfield, Alaric Fox as Police Chief of Enfield, and John/Jane Doe, the "Director of Public Safety," presumably for the Town of Enfield.

Defendants argue that Zoppo-Sassu, Cressotti, Fox, and the Director of Public Safety should be dismissed from this action because, *inter alia*, Clark has not alleged any facts showing their personal involvement in the events on October 18, 2020. ECF No. 51, at 9-13, 24. I agree.

It is well established that there is no "separate test of liability specific to supervisors." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" by the supervisor's own conduct, *Ashcroft v. Iqbal*, 556 U.S. 662,

676 (2009), rather than by their "supervision of others who committed the violation," *Tangreti*, 983 F.3d at 619.

The Complaint alleges no individual actions by Zoppo-Sassu, Cressotti, Fox, or the Director of Public Safety, let alone any actions that violated the Constitution. These Defendants are mentioned only in the case caption and the list of parties. Compl. 1-3. The Complaint alleges no facts to implicate the personal involvement of these individuals in the events at issue in this suit. Clark argues he requires discovery to assert sufficiently detailed allegations of personal involvement by Zoppo-Sassu, Cressotti, Fox, or the Director of Public Safety. Pl.'s Mem., ECF No. 59, at 5-6. But a Complaint must provide "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 70 (E.D.N.Y. 2021) (stating that "discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim") (internal quotation marks and citation omitted). I therefore grant the motion to dismiss with leave to amend as to Defendants Zoppo-Sassu, Cressotti, Fox, and John/Jane Doe as Director of Public Safety.

### 3.    Count One: Photographs

Count One of the Complaint alleges that members of the Enfield Police Department, including Detective Brian Callaghan and other Defendants, violated Clark's substantive due process rights by "taking and *likely* sharing the photos of Lillian J. Clark's remains without any legitimate governmental purpose." Compl. 19 (emphasis in original). Count One asserts that this conduct "shocks the conscience and offends the community's sense of fair play and decency." *Id.* Defendants do not discuss Count One in detail, instead broadly asserting that

"[t]he plaintiff's § 1983 claims fail to state legally cognizable claims for relief," ECF No. 51, at 1, and relying on other grounds for dismissing this action. Nevertheless, I consider *sua sponte* whether Count One states a viable claim for relief.

In *Marsh v. Cnty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012), the Ninth Circuit considered a case where a mother alleged that a former prosecutor, after his retirement, gave a copy of her son's autopsy photograph to a newspaper and a television station. The Court concluded the former prosecutor's "attempt to publish the autopsy photograph is sufficiently shocking to violate Marsh's substantive due process right." *Id.* at 1155 n.3. The Court reasoned that "a parent's right to control a deceased child's remains and death images flows from the well-established substantive due process right to family integrity" and "the Constitution protects a parent's right to control the physical remains, memory and images of a deceased child against unwarranted public exploitation by the government." *Id.* at 1154. The Court concluded that "[t]his intrusion into the grief of a mother over her dead son—without any legitimate governmental purpose—'shocks the conscience' and therefore violates Marsh's substantive due process right." *Id.* at 1155.

Here, in contrast to the allegations in *Marsh*, the Complaint contains no factual allegations suggesting that Detective Callaghan or other officers have attempted to publish the photographs they took, shared them with members of the public, or otherwise used them for some exploitative or illegitimate purpose. Indeed, the Complaint does not allege that the photographs were shared with anyone at all but instead asserts that "[b]y taking and *likely* sharing the photos of Lillian J. Clark's remains without any legitimate governmental purpose, members of the Enfield Police Department, including . . . Defendant Brian Callaghan . . . deprived Plaintiff of his substantive due process right." Compl. 19 (emphasis in original)

(citing *Marsh*, 680 F. 3d 1148). Thus, unlike in *Marsh*, where photographs of the deceased had in fact been given by a former prosecutor to the press, here the Complaint contains no factual allegations suggesting the photographs actually have been shared outside of the police department.

Clark argues that without discovery he cannot "complete the specific details of [Defendant's] actions." ECF No. 59, at 6. But before Clark is entitled to discovery, he must meet the pleading standard laid out by the Supreme Court in *Iqbal*. I therefore dismiss Count One with leave to amend.

### 4.    Counts Five, Six, and Seven: Discrimination Claims

The Complaint asserts claims for gender, age, and race discrimination. *See* Compl. 25 (Count Five, gender discrimination); *id.* at 26 (Count Six, age discrimination); *id.* at 27 (Count Seven, race discrimination). Defendants argue that the Complaint does not contain factual allegations from which an inference of discrimination can be drawn, and the allegations of discrimination are entirely conclusory. I agree and dismiss these claims for failure to state plausible claims for discrimination.

To state an equal protection claim, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). The plaintiff must show that the "selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005).

If a plaintiff can make that showing, he "also must show that the disparity in treatment cannot survive the appropriate level of scrutiny," *Phillips*, 408 F.3d at 129, which varies

according to the characteristic or classification upon which the alleged discrimination was based. Race is subject to "strict scrutiny," the highest form of scrutiny. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206-07 (2023) ("Under that standard we ask, first, whether the racial classification is used to further compelling governmental interests. Second, if so, we ask whether the government's use of race is narrowly tailored—meaning necessary—to achieve that interest.") (internal quotation marks and citation omitted). Gender is evaluated on the lesser "heightened scrutiny" standard. *See United States v. Skrmetti*, 605 U.S. 495, 510 (2025). Discrimination based on age is typically subject to the lowest standard of review, rational basis, with some exceptions. *See Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991).

The Complaint states that Mrs. Clark's was a woman, that she was 92, and that Clark himself is "of Asian descent." Compl. 26-27. But the Complaint does not relate these facts to the conduct of a particular defendant. In addition, the Complaint does not allege facts showing that Clark was treated differently than others similarly situated on the basis of those traits. Indeed, I cannot discern from the Complaint any factual basis for the claims of discrimination. Rather than elucidate the basis for these claims, Clark's Opposition to the Motion to Dismiss simply asserts that his "37 pages of facts and law" are sufficient and that more discovery is needed to flesh out his claims. ECF No. 59, at 8. As noted above, Clark must allege sufficient facts "to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, and he has not done so here.

I therefore dismiss Counts Five, Six and Seven with leave to amend.

**B.**     **Town of Enfield: Section 1983 Claims and the *Monell* Standard**

I read Clark's Complaint as asserting federal substantive due process and discrimination claims against the Town of Enfield under 42 U.S.C. § 1983. Defendants argue that Clark has failed to state a legally cognizable § 1983 claim against the Town of Enfield because Clark has alleged no facts showing that the events at issue in this case reflect any policy or custom of the Town that deprived Clark of any constitutional right. ECF No. 51, at 13. Clark responds by arguing that he has alleged sufficient facts, and that he would require discovery to uncover any additional relevant facts. ECF No. 59, at 7.

"To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights. . . ." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (internal quotation marks and citation omitted). "A municipality is only subject to liability under § 1983 when the violation of the plaintiff's federally protected right is attributable to the enforcement or execution of a municipal policy, practice, or custom." *Li v. Connecticut*, No. 22-cv-00996 (VAB), 2022 WL 3347220, at *21 (D. Conn. Aug. 11, 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A plaintiff may demonstrate a government "policy or custom" by alleging "the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Gomez v. City of Norwalk*, No. 15-CV-01434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017) (internal quotation marks omitted); *accord Jenkins v. City of*

12

*Hartford*, No. 22-CV-01289 (KAD), 2024 WL 1157342, at \*4 (D. Conn. Mar. 18, 2024).

However, where a plaintiff has not stated a claim for an underlying constitutional violation,

there is no *Monell* liability. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (absent

an underlying constitutional violation, there can be no *Monell* liability); *Segal v. City of New*

*York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found

no underlying constitutional violation, its decision not to address the municipal

defendants' liability under *Monell* was entirely correct.").

Here, as discussed above, the Complaint does not state a valid claim of any

constitutional violation by any state official. As Clark has not stated a claim for an underlying

constitutional violation, and there is basis for finding municipal liability. I therefore grant the

motion to dismiss with regard to any § 1983 claims against the Town of Enfield.

**C.    § 1985 Claims**

In addition to his claims under 42 U.S.C. § 1983, Clark appears to allege a Conspiracy

to Interfere with Civil Rights under 42 U.S.C. § 1985.[4]

To state a viable conspiracy claim under § 1985(3) a plaintiff must allege

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any
> person or class of persons of the equal protection of the laws, or of equal
> privileges and immunities under the laws; and 3) an act in furtherance of the
> conspiracy; 4) whereby a person is either injured in his person or property or
> deprived of any right or privilege of a citizen of the United States.

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264,

269 n.4 (2d Cir. 2006)); 42 U.S.C. § 1985(3). "Additionally, the conspiracy must be motivated

---

[4] Clark includes this charge in his "Jurisdiction" section but § 1985 does not appear in any of his subsequent claims. I nonetheless evaluate his claims under § 1985 because I must construe a *pro se* plaintiff's complaint liberally to raise the strongest arguments it suggests.

by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Clark v. Santander Bank, N.A.*, No. 24-CV-55 (VAB), 2024 WL 5186862, at *9 (D. Conn. Dec. 20, 2024) (internal quotations and citations omitted).

Because, as discussed above, Clark has not stated a viable claim for discrimination and therefore has not alleged that he was deprived of any right or privilege, I grant the motion to dismiss without prejudice as to Clark's § 1985 claim.

### D.    State Law Claims

Having dismissed all of Clark's federal claims, I decline to exercise supplemental jurisdiction over the state law claims raised in Counts Two through Four and Eight through Ten pursuant to 28 U.S.C. § 1367(c)(3). Although this case was filed nearly four years ago, this case is still at its early stages. *See Roskin-Frazee v. Columbia Univ.*, 474 F. Supp. 3d 618, 627 (S.D.N.Y. 2019) ("Having dismissed the only claims over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state law and common law claims at this early stage in the litigation."); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) ("[T]he exercise of supplemental jurisdiction is left to the discretion of the district court. . . .").

I cannot conclude that retaining jurisdiction over Clark's state law claims would promote economy, convenience, fairness, or comity. *See Clark v. Connecticut*, No. 23-CV-1527 (SVN), 2024 WL 4349054, at *4, *10 (D. Conn. Sept. 30, 2024) (declining jurisdiction over state law claims, including "assumption of duty," "breach of the covenant of good faith and fair dealing," and CUTPA violations).

14

## IV.    CONCLUSION

For the foregoing reasons, I GRANT Defendants' motion to dismiss in its entirety. Clark's claims against the Enfield Police Department and the State and OCME Defendants have already been dismissed. *See* ECF Nos. 71; 79. I dismiss Clark's claims against the remaining Defendants without prejudice and with leave to file an amended complaint that addresses the deficiencies identified in this Opinion.

If Clark believes he can state a viable claim, Clark shall file an amended complaint that addresses the deficiencies identified in this Opinion on or before July 19, 2026. If Clark does not file an amended complaint by that date, I will instruct the Clerk of Court to close this case.

**SO ORDERED.**

New Haven, Connecticut
June 18, 2026, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

15